UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| GLORIA J. HOLLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-163 |
| | ) | |
| v. | ) | |
| | ) | Honorable Robert Holmes Bell |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a partially favorable decision of the Commissioner of Social Security. The Commissioner found that plaintiff was not entitled to disability insurance benefits (DIB) because she was not disabled on or before the September 30, 2000 expiration of her disability insured status. The Commissioner found that plaintiff was disabled on and after September 20, 2001. Thus, plaintiff was entitled to supplemental security income (SSI) benefits.

Plaintiff filed her applications for SSI and DIB benefits on July 16, 2001. (A.R. 49-51). Plaintiff initially claimed a 1992 onset of disability, but later amended her alleged onset date to January 1, 2000. (*see* A.R. 776; *see also* A.R. 788, 797, 803). Plaintiff's claims were denied on initial review. (A.R. 30-33). On May 14, 2004, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 772-817). On August 27, 2004, the ALJ issued a decision finding that plaintiff was not entitled to DIB benefits. The ALJ found that plaintiff was entitled to SSI benefits based on a September 20, 2001 onset of disability. (A.R. 17-

25). On January 24, 2006, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision. On March 7, 2006, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits.[1]

Plaintiff's brief presents the following statement of errors:

I.  THERE WAS INSUBSTANTIAL EVIDENCE THAT PLAINTIFF COULD HANDLE SEDENTARY WORK BEFORE 9/30/00.

II. DEFENDANT FAILED TO CARRY ITS [sic] BURDEN OF PROOF AT THE FIFTH STEP.

(Plf. Brief at 12, 15, docket # 9). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).

---

[1] Plaintiff's complaint did not seek review of the portion of the Commissioner's decision denying her application for SSI benefits for the month of August of 2001. (*See* docket # 1, ¶¶ 2, 3). SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *see also Romero v. Barnhart*, 135 F. App'x 172, 174 (10th Cir. 2005); *Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Plaintiff filed her application in July 2001 and she was found disabled as of September 2001. Thus, August 2001 was the only month potentially at issue if plaintiff had requested judicial review on her SSI claim.

Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on January 1, 2000, her alleged onset of disability, and continued to meet the requirements through September 30, 2000, but not thereafter. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had severe impairments of "osteoarthritis (neck, shoulders, lumbar spine, and knees); plano valgus and tarsal tunnel syndrome of the left foot; right foot disorder and history of related surgeries; degenerative joint disease of right knee; and right wrist contusion and cyst." (A.R. 24). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible for the period before September 20, 2001:

> The claimant underwent surgery for reconstruction of her left foot on September 20, 2001. After a lengthy period of recuperation from that surgery she began experiencing increased low back pain around February 2002 which has since seriously compromised her ability to remain seated or standing long enough to perform her past clerical work (Exhibits 8F, 16F, 17F, 19F, and 20F). While the record establishes that the claimant suffered a variety of problems with both feet and right knee since the late 1990's (she suffered an injury in June 1997 when slipping into a hole at home), the record does not document limitations sufficient to preclude the performance of past clerical work until September 2001. Hence, the undersigned finds that the claimant's allegations of debilitating pain and limitations are credible for the period since September 20, 2001, but not prior thereto.

(A.R. 22). The ALJ found that before September 20, 2001, plaintiff retained the following residual functional capacity (RFC):

> [C]laimant can lift or carry up to ten pounds maximum. In an eight-hour workday, she can stand or walk up to two hours and sit at least six hours. She should never climb ladders, scaffolds or ropes and only occasionally climb ramps or stairs, balance, stoop, crouch, crawl, squat or twist or turn her neck. Claimant cannot engage in overhead reaching with the upper extremities and only occasionally pushing or pulling with her upper or lower extremities or

>   use foot controls.  She can engage in occasional handling and fingering with the right (non-dominant) hand.

(A.R. 24). The ALJ found that on and after September 20, 2001, plaintiff's RFC also included a "need[] to elevate her legs to at least footstool level when seated" because she was unable to "persist at sitting, standing, or walking during an eight-hour workday without regular unscheduled rest breaks that enable her to lie down or recline." (A.R. 24). The ALJ found that plaintiff's past relevant work as a receptionist, general office clerk, and order clerk did not require the performance of work-related activities precluded by her RFC before September 20, 2001.  Thus, the ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis.  The ALJ found that plaintiff was disabled on and after September 20, 2001.

### 1.

It was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled before the September 30, 2000 expiration of her disability insured status. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see also Rooney v. Commissioner*, 114 F. App'x 174, 176 (6th Cir. 2004); *Wirth v. Commissioner*, 87 F. App'x 478, 479 (6th Cir. 2003). Plaintiff argues that the Commissioner's decision finding that she retained the RFC for a limited range of sedentary work is not supported by substantial evidence.  (Plf. Brief at 12-14, docket # 9).  RFC is the most, not the least, a claimant can do despite her impairments.  20 C.F.R. § 404.1545(a); *Griffith v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).  RFC is a determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 531.

Plaintiff argues that the ALJ's finding that plaintiff retained the RFC to "stand or walk up to two hours and sit at least six hours" in an 8-hour workday was "unreasonable." (Plf. Brief at 13). She presents the argument in these terms:

> Given the knee problem plus the wreck surgeons had made of Plaintiff's feet, it would be unreasonable to infer (as the ALJ had to do in order to find her capable of sedentary work) that she could stand two hours out of eight. Rather, the only reasonable inference is that the knee and foot problems before October, 2000 precluded being on one's feet for any significant time. Since more-than-minimal standing is required for "sedentary" employment, the ALJ's finding that Plaintiff could handle PRW was not supported by substantial evidence.

(Plf. Brief at 13). Later, plaintiff argues that the ALJ's finding that plaintiff could sit 6 hours of an 8-hour workday is not supported by substantial evidence because a physical therapist stated that plaintiff could sit only two hours. (*Id.* at 14). Implicit in both plaintiff's arguments is a challenge to the ALJ's credibility determination.

This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."

*Jones*, 336 F.3d at 476; *see West v. Commissioner*, No. 06-5763, 2007 WL 1991059, at * 4 (6th Cir. July 15, 2007). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). Upon review, I find that the ALJ's credibility and RFC determinations are supported by substantial evidence.

"A RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" *Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work -- Implications of A Residual Functional Capacity For Less Than A Full Range of Sedentary Work*, SSR 96-9p (SSA July 2, 1996) (reprinted at 1996 WL 374185, at * 1). Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "'Occasionally' means occurring from very little to up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at * 3.

The medical history does not support a finding of disability before September 20, 2001.[2] Plaintiff had a history of foot surgeries in the 1990's, primarily involving her right foot (A.R. 19; *see* A.R. 333-35, 459-61, 728-71), and arthroscopic surgery on her right knee on September 18, 1997, to address a tear in the medial meniscus. (A.R. 730). A 1999 MRI of plaintiff's right knee showed some degenerative changes, but no evidence of any tear. (A.R. 697; *see* A.R. 339-40).

On February 22, 1999, plaintiff reported to Ramin Rahimi, D.O., that she had experienced back pain since August of 1998. Plaintiff reported that she had no history of physical therapy. Upon examination, plaintiff's deep tendon reflexes were 2+ bilaterally. "[M]anual muscle testing of bilateral hip flexors, knee extensors, ankle dorsiflexors [and] plantar flexors [were] 5/5." (A.R. 688). "Range of motion of the lumbosacral spine reveal[ed] [the] range of motion of lumbar flexion, extension and side bending rotations [were] plain free. Plaintiff's gait was non-antalgic and she was able to perform "toe walks and heel walks." Dr. Rahimi offered a diagnosis of mechanical low back pain and started plaintiff on a physical therapy program to strengthen her abdominal muscles and back extensors. (*Id.*).[3] On March 25, 1999, plaintiff indicated to Dr. Rahimi that she had no significant back pain. (A.R. 345, 472, 693). On April 15, 1999, plaintiff advised Dr. Rahimi that she had recently "noticed" back pain. Plaintiff displayed a reduced range of motion, "particularly on flexion at the lumbar spine with pain being localized in the mid lumbosacral spine." No atrophy was noted. Dr. Rahimi offered a diagnosis of a lumbosacral sprain and provided plaintiff

---

[2]Plaintiff's arguments focus on the ALJ's findings with regard to functional limitations in the areas of sitting, standing and walking. Thus, the medical records discussed herein specifically pertain to those abilities. Because the ALJ's opinion adequately summarizes plaintiff's overall medical treatment history (A.R. 19-22), it is incorporated herein by reference.

[3]On March 2, 1999, a physical therapist recorded plaintiff's subjective claim that she was limited to sitting no more than 2 hours. (A.R. 469).

with a prescription for Relafen for her complaints of right knee and low back discomfort. (A.R. 339-40, 470-71, 689-92; *see* A.R. 673-81).

Plaintiff alleged a January 1, 2000 onset of disability. On April 6, 2000, plaintiff reported that over the previous few days she had noted an increase in right foot pain. Plaintiff was provided with a prescription for Vioxx and referred to an orthopedic surgeon for a second opinion. (A.R. 335, 461). On April 19, 2000, was examined by Sudhir B. Rao, M.D. Plaintiff's left foot was "relatively asymptomatic." Her right foot showed considerable deformity and scars from earlier surgical procedures. Dr. Rao described plaintiff as having a complex foot problem that could possibly be improved by orthotics. He found that plaintiff's right foot condition was not amenable to surgical intervention. (A.R. 333-34, 459-60). Plaintiff's disability insured status expired on September 30, 2000.

X-rays of plaintiff's left ankle on February 9, 2001, revealed no acute fractures, subluxations or significant degenerative changes. (A.R. 167, 306). On May 3, 2001, plaintiff was examined by Marciej Solarewicz, M.D. in relation to her complaints of joint pain, particularly in her left ankle. Plaintiff stated that she was not taking any pain medication. X-rays of plaintiff's ankle returned normal results. Plaintiff reported that she was concerned that she might have Lyme disease. Upon examination plaintiff's left ankle had a full range of motion with "mild" swelling. (A.R. 153-54).

On June 14, 2001, plaintiff was examined by Patrick Meyer, D.P.M. This examination revealed "very mild" edema. Plaintiff's MRI indicated "mild fluid around the posterior tibial tendon, however, no tears in the sheets nor within the tendon itself. The MRI also demonstrate[d] no osseous deformities around the medial malleolus." (A.R. 171). Dr. Meyer

offered the following diagnosis:   1) posterior tibia tendinitis of the left foot; 2) a contusion of the medial malleolus of the left foot; 3) ankle sprain of the left foot; and 4) edema.  Plaintiff was treated with a "unna boot" on her left lower extremity "in order to support and immobilize this L[eft] foot more extensively [and] . . . to decrease her edema and pain." (*Id.*).  On June 28, 2001, plaintiff reported no improvement.  She stated that she had cut off the unna boot after wearing it for a week. She indicated that she had been "intermittently" using an air cast and an Ace wrap.  Upon examination, plaintiff's "neurovascular status [was] grossly intact to her L[eft] foot."  Plaintiff continued to complain of left foot pain.  Dr. Meyer's diagnosis was posterior tibial tendinitis and severe pes plano valgus of the left foot.  (*Id.*).  Plaintiff was advised that conservative treatment options had been exhausted.  Plaintiff indicated that she wanted to explore the possibility of surgical correction.  (*Id.*).

On September 13, 2001, plaintiff received a preoperative examination.  Plaintiff complained of left foot and ankle discomfort.  The neurovascular status of plaintiff's lower extremities was grossly intact.  Plaintiff had a "mild" fissure on the posterior aspect plantar of her left heel.  Plaintiff generally had no edema, no erythema, and no signs of acute infection. Dr. Meyer noted some mild edema around the PT tendon of plaintiff's left foot.  Plaintiff's condition was diagnosed as (1) posterior tibial tendonosis; (2) severe pes plano valgus of the left foot; and (3) hypermobility of the 1st ray of the left foot.  The available surgical options were explained to plaintiff, including the anticipated recovery period of "8 weeks within a short leg nonweight bearing style cast and then approximately 1 month after that in a removable walking style cast." (A.R. 170, 208).  The September 14, 2001, preoperative evaluation conducted by Dr. Solarewicz indicated that plaintiff's extremities had no clubbing, cyanosis, or edema.  Plaintiff was grossly intact

neurologically. (A.R. 274-75, 622-23). On September 20, 2001, Dr. Meyer performed the following surgical procedures: "(1) Evans calcaneal osteotomy with bone graft, left foot; (2) [d]ebridement posterior tibial tendon, left foot; (3) [f]lexor digitorum longus tendon transfer, left foot; and (4) [l]apidis fusion, first metatarsal-cuneiform joint, left foot." (A.R. 281-85, 421-25). Plaintiff required a lengthy recovery period, and it was during this period that plaintiff began experiencing increased low back pain which the ALJ found "seriously compromised her ability to remain seated or standing long enough to perform her past clerical work." (A.R. 22; *see also* A.R. 174-78, 248, 256-58, 267, 270-73, 549-77, 596, 602-06, 618-19, 621-23). I find that the ALJ's RFC and credibility determinations are supported by substantial evidence.

The ALJ found that plaintiff was not disabled before September 20, 2001 because she was capable of performing her past relevant work as a receptionist, general office clerk, and order clerk. The vocational expert testified that these jobs were sedentary in terms of exertion, and "generally at the low-end of semi-skilled." (A.R. 810). The VE also testified that a person with plaintiff's RFC before September 20, 2001 would be capable of performing plaintiff's past relevant work. (A.R. 811-812). Plaintiff's brief presents the following argument regarding the "occasional use of foot controls" component of plaintiff's RFC:

> Last but not least, the hypothetical to the VE included occasional use of foot pedals. By contrast, before eligibility ran out, Plaintiff's right foot was still problematic, while her right knee had a degraded meniscus and was painful. Since it would be unreasonable to infer that such a person could use pedals at all, the ALJ's hypothetical described a person less disabled than plaintiff was, thus eliciting an immaterial answer. *Reed v. Sec'y of H.H.S.*, 804 F. Supp. 914, 924 (E.D. Mich. 1992)("A response to a flawed hypothetical question is not substantial evidence").

(Plf. Brief at 14). To the extent that plaintiff is repeating her challenges to the ALJ's RFC and credibility determinations, the arguments should be rejected for the reasons previously stated herein.

The ALJ made a Step 4 determination where plaintiff had the burden of proof rather than a Step 5 determination where the burden would shift to the Commissioner.  *See Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).  Plaintiff did not present evidence that her past relevant work, as she performed it and as generally performed in the national economy, required more than occasional use of foot controls.  (*see* A.R. 79-81; 783-86).  Plaintiff's argument that the VE's testimony was "immaterial" is meritless.

**2.**

Plaintiff's argument that the Commissioner failed to carry her burden at Step 5 of the sequential analysis (Plf. Brief at 15), requires very little discussion.  As noted in the preceding paragraph, the ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because plaintiff was capable of performing her past relevant work, and the "burden of proof lies with the claimant at steps one through four of the process . . . ."  *Her v. Commissioner*, 203 F.3d at 391.  The ALJ never reached Step 5 because plaintiff was found not to be disabled at an earlier stage of the sequential analysis.  *See McClanahan v. Commissioner*,  474 F.3d 830, 833 (6th Cir. 2006); *Combs v. Commissioner*, 459 F.3d 640, 642 (6th Cir. 2006).

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  August 3, 2007            /s/  Joseph G. Scoville
                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).