UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GLORIA J. HOLLAND, | Case No. 1:06-cv-163 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Scoville |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**Order Overruling Plaintiff's Objections, Adopting R&R, and Terminating Case**

This matter was referred to the Honorable Joseph G. Scoville, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Friday, August 3, 2007.

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Calculating the ten-day period as prescribed by Federal Rule of Civil Procedure 6(a), the court finds that plaintiff Holland timely filed objections to the R&R on Monday, August 13, 2007. The court also finds that Holland's objection is sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which she has objected. The Commissioner did not file a response to Holland's objections within the fourteen days allotted by W.D. MICH. L. CIV. R. 72.3(b).

Following *de novo* review, the court finds the R&R to be well-reasoned and is unconvinced by plaintiff Holland's objections. For the reasons explained by the R&R, substantial evidence supported the ALJ's determination that Holland was disabled after undergoing multiple surgeries in September 2001, but not between her amended alleged disability onset date of January 1, 2000 and her date late insured ("DLI") of September 30, 2000 ("the contested period"), during which latter period she was 53-54 years old. Specifically, substantial evidence supported the ALJ's determination that until September 20, 2001, a year after Holland's DLI, she retained the residual functional capacity ("RFC")[1] to do a limited range of sedentary work, including her past relevant work as a general officer clerk, receptionist, and order clerk.[2]

It is undisputed that, as found by the ALJ, Holland suffered severe impairments of the neck, shoulders, lumbar spine, knees, both feet, and one wrist. Holland objects that the ALJ should have found that these impairments rendered her incapable of doing any past relevant work during the contested period:

> Plaintiff's feet are a mess. Five surgeries have left her with implants in the left foot and a wired-together, misshapen right foot. Specifically, Dr. Rao reported (in April,

---

[1] Residual functional capacity is the *most* that the claimant can still do despite her limitations. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (en banc) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ had to consider Holland's RFC for suitable work activity "on a regular and continuing basis." *Meece v. Barnhart*, 192 F. App'x 456, 466 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1545(b)).

[2] Sedentary work entails lifting no more than 10 pounds at a time and occasionally lifting and carrying small objects, *see Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 462 (6th Cir. 2007) (per curiam) (Guy, Suhrheinrich, & Griffin, JJ.), *pet. cert. filed o.g.*, 75 U.S.L.W. 3623 (U.S. May 9, 2007) (No. 06-1493), such as docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

2000):

> The fifth toe is supinated and curled upon itself . . . the fourth toe is completely flail . . . the second toe is again flail . . . The big toe shows shortening . . . . Active motion is absent in all toes except the big toe . . . . This patient . . . *cannot weightbear [sic] on her toes* and preferentially loads the metatarsal heads . . . .
>
> I would recommend amputation of the fifth toe and removal of the metatarsal head . . . . The question remains whether we should amputate the fourth toe as well . . . .

This describes someone who, per the ALJ, can use foot pedals?

ALJ findings must be based on "substantial" evidence. Since there was no "substantial" evidence (or indeed any) evidence that a person with a mangled right foot and unable to bear weight on her toes can use foot pedals and stand two of eight hours, the ALJ's findings to that effect should be reversed.

Holland's Objection at 8 (emphasis in original). Holland contends that because these "objective" foot problems were described by a treating physician (Rao), that alone is enough to undermine the ALJ's determination without referring to Holland's own statements. She remarks that "the magistrate [judge]'s attempt to save the ALJ's findings by pointing to the ALJ's authority to determine claimant credibility amounts to knocking down a straw man." *Id.*

The court first notes that the same physician, Dr. Sudhir B. Rao, in the same month as the notes quoted by Holland (April 2000), stated that while Holland's right foot was considerably deformed and scarred from surgical procedures, her left foot was "relatively asymptomatic." That does not necessarily mean that the evidence on balance showed she was able to stand and walk sufficiently to do sedentary work, but it must be noted in order to present a full picture of her condition. In addition, while Dr. Rao recommended amputation of the fifth toe and removal of the metatarsal head, he also opined that that portion of the foot did not participate in bearing weight and thus its removal should not further impair that function. AR 459-60. Furthermore, when Dr. Rao

3

later observed Holland in August, September, and September 2000 – all during her insured period – he noted no abnormality in her gait.  AR 702, 705, 715 & 719.

On this record, the most the court can say is that some evidence arguably supported the argument that Holland was disabled during the insured period, *not* that the ALJ was *compelled* to reach that conclusion.  The ALJ was entitled to consider Holland's own contemporaneous claims about the degree of her pain and her ability to walk, stand, and sit during that period.  And, if he found that those claims were not entirely credible, he was entitled to reach conclusions based on that assessment in combination with medical evidence and opinion.

Specifically, as the R&R notes, Holland complained of pain in her left ankle during the contested period, but a February 2001 x-ray revealed no acute fracture, subluxation, or significant degenerative change, and a May 2001 x-ray was normal as well.  The same May 2001 examination, by Dr. Solarewicz, revealed a full range of motion in Holland's left ankle, with only mild swelling. Perhaps most significantly, Holland claimed that she was experiencing joint pain, but she told Dr. Solarewicz that she was not taking any pain medication.  The ALJ was entitled to construe Holland's failure to take pain medication as inconsistent with her claim that her conditions caused such pain and limitations as to prevent her from doing the very limited things needed for sedentary work.[3]

---

[3]

*Cf. Nagle v. Comm'r of Soc. Sec.*, No. 98-3894, 191 F.3d 452, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) ("Nagle's testimony regarding his daily activities and his use of pain medication belies his claims of disabling pain. * * * Nagle . . . stated that . . . he did not take the medication as prescribed because he did not want to become dependent upon the drugs.  He stated that he was never completely pain free and that he took medication on his bad days.  The internal inconsistencies regarding Nagle's pain levels, household activities, and relief through medication were properly resolved by the Commissioner and cannot be disturbed.");

*Peters v. HHS*, No. 82-1556, 755 F.2d 933, 1985 WL 12822 (6th Cir. Jan 11, 1995) (affirming decision wherein ALJ reasoned, "while it may be concluded that the claimant does experience some pain and discomfort related to his impairments, the minimal pain medication and

The ALJ could also find it significant, and detrimental to Holland's credibility, that she admittedly discontinued treatment that was prescribed for her left foot and ankle problem during the contested period. Specifically, following a June 14, 2001 examination, Dr. Meyer, D.P.M., placed an "unna boot" on Holland's left foot and ankle to support and immobilize that extremity and decrease her "very mild" edema and pain. *See Hoffman v. Raba*, No. 89-C-4867, 1990 WL 205277, at *4 n.1 (N.D. Ill. Dec. 10, 1990) ("An unna boot is made [by] applying gelatin, glycerine, and zinc-oxide paste to gauze, which is then wrapped around the leg in spiral fashion to form a rigid boot when the mixture hardens.") (citation omitted).[4]  Yet on June 28, 2001, Holland reported that she had cut off the unna boot after wearing it for only one week – without being directed to do so by Dr. Meyer or any other physician – and that her condition had not improved.

The ALJ could logically view Holland's noncompliance with part of the prescribed treatment regimen (the unna boot) as evidence that her functional limitation and pain, while real, were not quite as severe as she alleged. *See generally Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 846 (6th Cir. 2004) (Tarnow, D.J., joined by Gibbons & Sutton, JJ.) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's allegations of disabling pain.") (citing, *inter alia*, *Kimbrough v. HHS*, 801 F.2d 794, 797 (6th Cir. 1986)); *Hall-Thulin v. Comm'r of Soc. Sec.*, No. 96-1940, 110 F.3d 64, 1997 WL 144237, at *1 (6th Cir. Mar. 27,

---

[the lack of objective medical evidence] show that it is not of sufficient intensity, persist[e]nce or frequency to preclude the claimant from having residual functional capacity for sedentary work.").

[4]

*See also Williams v. Borg*, No. 90-16269, 945 F.2d 410, 1991 WL 197006, at *1 (9th Cir. Oct. 3, 1991) (calling an unna's boot "a medicated bandage"); *Haldane v. US*, 1 Cl. Ct. 691, 692 (Cl. Ct. 1983) (calling unna boots "lightweight flexible supports"); *Alston v. Howard*, 925 F. Supp. 1034, 1037 (S.D.N.Y. 1996) (unna boot is "commonly referred to as a soft-cast").

1997) (per curiam) (Lively, Nelson, & Moore, JJ.) ("in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician") (citing 20 C.F.R. § 404.1530(a)).[5]

Moreover, as the Commissioner argued before the Magistrate Judge, *see* Comm'r Br. at 7, Holland failed to identify any medical opinion actually stating that her limitations prevented her from performing her past clerical jobs during the insured period with the possible accommodations mentioned by the ALJ. The record might support the conclusion that Holland could not perform her past relevant work during the insured period without experiencing pain or discomfort (say, from standing or walking), but that does not compel a determination that she was disabled. *Qantu v. Barnhart*, 72 F. App'x 807, 811 (6th Cir. 2003) ("[I]t is clear from the ALJ's decision that she accepted that claimant suffered some pain, but found that her pain was not disabling. We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled.") (citing *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)).

It is significant that the evidence permitted the ALJ rationally to question Holland's credibility, because a key piece of her evidence rests on that credibility. Specifically, Holland relies on a physical-therapy evaluation note indicating that she could not sit for more than two hours, AR 469, but that statement was under the section entitled "Subjective." Likewise, a Dr. Rahimi's notes from February 1999 state that a period of prolonged sitting caused Holland increased pain, AR 687, but this too appeared in a section entitled "Subjective," while that physician's own findings from that same examination included no abnormalities in reflex, strength, sensation, straight leg-raising,

---

[5]

*Cf., e.g., Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 527-28 (6th Cir. 2006) (Ackermann, D.J., joined by Moore & Gibbons, JJ.) (affirming denial of benefits where "the ALJ held that 'Lawson's credibility with respect to her symptoms and impairments in significantly diminished by her . . . *failure to take medications as prescribed* . . . .") (emphasis added).

or range of motion, that would indicate a significant back impairment, AR 688.

Based on the foregoing, substantial evidence supported the pain and limitation findings which underlied the ALJ's framing of the hypothetical question to the vocational expert. When the vocational expert then opined that Holland's limitations, as posed in the hypothetical, did not prevent her from doing her past relevant clerical work with reasonable accommodation (i.e. only occasional use of foot pedals / controls), the ALJ was entitled to rely on that expert opinion in reaching his ultimate conclusion. "In general, expert vocational testimony in response to a hypothetical question accurately portraying a claimant's vocational abilities and limitations is substantial evidence that claimant is not disabled." *Yopp-Barber v. Comm'r of Soc. Sec.*, 56 F. App'x 688, 689 (6th Cir. 2003) (per curiam) (Guy & Moore, JJ., and Beckwith, D.J.) (citing *Davis v. HHS*, 915 F.2d 186, 169 (6th Cir. 1990)).

Finally, the ALJ found that it was only after Holland's September 20, 2001 surgeries – bone graft, debridement, tendon transfer, and fusion procedures, *see* AR 421-25 – that she "began experiencing increased low back pain which . . . 'seriously compromised her ability to remain seated or standing long enough to perform her past clerical work.'" R&R at 11 (quoting AR 22). This, of course, was not inconsistent with his determination that she was still able to perform that past work during the earlier contested period. *Cf. Mingus v. Comm'r of Soc. Sec.*, No. 98-6270, 188 F.3d 508, 1999 WL 644341, at *5 (6th Cir. Aug. 19, 1999) ("Though her condition may have worsened over time, the condition of her eyesight in August of 1996 is simply not relevant to the condition of her eyes during the relevant time period, and this new evidence does not overcome medical evidence in 1993, 1994, and 1995."); *Jones v. Comm'r of Soc. Sec.*, No. 96-2173, 121 F.3d 708, 1997 WL 413641, at *1 (6th Cir. July 17, 1997) ("[R]egardless of the seriousness of his present disability,

Jones must prove that he was disabled prior to June 20, 1983 . . . .").

Accordingly, having reviewed the pleadings, the parties' briefs, the R&R, and plaintiff Holland's timely objection to the R&R, the court hereby **OVERRULES** the plaintiff's objections, **ADOPTS** the R&R [docket #13], and **AFFIRMS** the Commissioner's decision.[6]

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED this 27th day of September 2007.**

/s/ Paul L. Maloney
_____
Paul L. Maloney
United States District Judge

---

[6] Because the ALJ did not err in determining that Holland was not disabled at the fourth step of the analysis, he properly never reached the fifth step of the analysis, where the Commissioner would have had the burden of proof. Accordingly, the court does not consider the portion of Holland's brief contending that the Commissioner did not carry its burden of proof at the fifth step (Holland's Objections at 9-10).